IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 18, 2002 Session

## STATE OF TENNESSEE v. WILLIAM ROBERT POSEY

**Appeal from the Criminal Court for Hamilton County**
**No. 232588     Stephen M. Bevil, Judge**

_____

**No. E2001-02665-CCA-R3-CD**
**August 26, 2002**
_____

The Defendant, William Robert Posey, appeals as of right from the judgment of the trial court, which found him guilty of driving under the influence (DUI) as a third offender. The Defendant raises two central issues on appeal. First, the Defendant argues that the two preceding DUI convictions are invalid on their face and therefore cannot be used to enhance his punishment for the present conviction. Second, the Defendant argues that the trial court committed error by failing to hold a hearing pursuant to Momon v. State, 18 S.W.3d 152 (Tenn. 1999), to determine whether the Defendant personally waived his right to testify. Because the record is void of any evidence that the Defendant did personally waive his right to testify, we remand the case to the trial court for a hearing to determine whether the Defendant's right to testify was violated, and if so, whether the violation of the Defendant's right to testify was harmless beyond a reasonable doubt.

**Tenn. R. App. P. 3 Appeal as of Right; Remanded to the Trial Court**

DAVID H. WELLES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Lloyd A. Levitt, Chattanooga, Tennessee, for the appellant, William Robert Posey.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Bill Cox, District Attorney General; and Thomas E. Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On October 24, 1999, the Defendant was arrested for driving under the influence of an intoxicant in violation of Tennessee Code Annotated section 55-10-401. At the bench trial on May 14, 2001, Brian Ashburn of the Hamilton County Sheriff's Department testified that he was on patrol on October 24, 1999. While he was driving southbound on a two-lane road, he observed a vehicle, driven by the Defendant, traveling northbound. The Defendant's vehicle crossed the center line and

almost struck Officer Ashburn's vehicle head-on. To avoid a collision, Officer Ashburn swerved off the road into a parking lot. He then turned his patrol car around, activated his lights, and followed the Defendant. The Defendant pulled his vehicle into a parking lot and drove to the rear of a building, where he stopped. Officer Ashburn drove his patrol car behind the Defendant, and, as he was exiting his vehicle, saw the Defendant open his door and jump out of his vehicle. Officer Ashburn then pursued the Defendant on foot to the front of the building, where another officer who had arrived on the scene stopped the Defendant.

Officer Ashburn testified that upon talking with the Defendant, he noticed a strong odor of alcohol on the Defendant's breath. The Defendant was very unsteady on his feet. He was unable to produce a driver's license, and he gave Officer Ashburn false information about himself. The Defendant refused to submit to field sobriety tests and a breathalyzer test. In Officer Ashburn's opinion, the Defendant was clearly intoxicated.

After hearing the evidence, the trial court found beyond a reasonable doubt that the Defendant was guilty of driving under the influence on October 24, 1999. Because the Defendant had two prior convictions for DUI, the court sentenced him as a third offender pursuant to Tennessee Code Annotated section 55-10-403(a)(1). It is from this judgment the Defendant now appeals.

The first of the two main arguments that the Defendant advances is that the judgments of his two prior DUI convictions are facially invalid and therefore cannot be used to enhance the penalty for the instant conviction.[1] We begin our analysis by noting that the Tennessee Supreme Court has recognized the rule "that a facially valid, unreversed judgment in a court with jurisdiction over the subject matter and the person cannot be collaterally attacked in a subsequent proceeding except by the authorized routes of attack." State v. McClintock, 732 S.W.2d 268, 271 (Tenn. 1987). "The authorized route for attacking a facially valid, final judgment of conviction is by the Post-Conviction Procedure Act." Id. at 272. However, if a judgment is facially invalid, then it may not be used to enhance punishment in a subsequent prosecution. See id; see also State v. Whaley, 982 S.W.2d 346, 348-49 (Tenn. Crim. App. 1997) (holding that a Georgia conviction, which was facially invalid because it lacked the judge's signature and any indication that the defendant was represented by counsel or had waived her right to counsel, could not be used to enhance a subsequent Tennessee conviction).

The Defendant was first convicted of driving under the influence in Rhea County, Tennessee, in 1990. The Defendant alleges that this conviction is invalid on its face merely because it fails to contain written advice of an enhanced penalty for a subsequent conviction or a warning that a conviction in another state may be used to enhance the punishment for a DUI committed in

_____

[1]In his brief, the Defendant also asserts that the portion of Tennessee Code Annotated section 55-10-403(a)(3) which allows the prosecution to go back more than ten years from the date of the present conviction when assessing prior convictions for enhancement purposes is void as an ex post facto law. However, he concedes in his brief that this argument has already been rejected by this Court in State v. Clever, 70 S.W.3d 771 (Tenn. Crim. App. 2001). Having made said concession, the Defendant opts to not further argue the issue in his brief. Because Clever is controlling authority, we choose not to address the issue further. See Tenn. S. Ct. R. 4(H)(2).

Tennessee. The Defendant states that these omissions render the 1990 conviction void so that it may be collaterally attacked and should not have been used to enhance the punishment for his present DUI conviction. We disagree.[2]

Tennessee Code Annotated section 55-10-403(g)(1) states that "[a]ny person convicted of an initial or subsequent [DUI] offense shall be advised, in writing, of the penalty for second and subsequent convictions" and "[w]ritten notice by the judge shall inform the defendant that a conviction for the offense of driving under the influence of an intoxicant committed in another state shall be used to enhance the punishment for a violation of § 55-10-401 committed in this state." However, "the statute does not require that a defendant have received such notice prior to being sentenced on a second or subsequent offense." State v. George S. Mercier, No. 02C01-9404-CC-00066, 1994 Tenn. Crim. App. LEXIS 695, at *2 (Tenn. Crim. App. Oct. 19, 1994). Prior to Mercier, this Court held in State v. Rea, 865 S.W.2d 923, 924 (Tenn. Crim. App. 1992), that the defendant's claim that she had not been warned in writing by the Alabama trial court of the enhancing penalties for subsequent DUI convictions was without merit. More recently, this Court held that "the fact that the defendant did not have the benefit of being warned pursuant to Tenn. Code Ann. § 55-10-403(g)(1) of enhanced punishment for future DUI's before he was charged a second time for DUI is of no consequence." State v. Bowen, 67 S.W.3d 826, 828 (Tenn. Crim. App. 2001). "The statute does not provide that failure to warn bars enhanced sentencing for subsequent DUI's." Id. Because precedent clearly states that the failure to warn of enhanced punishment does not bar enhanced sentencing for subsequent DUI's, we hold in this case that the failure to include in the Defendant's 1990 judgment a written warning of enhancement does not render the judgment facially invalid. Therefore, McClintock prohibits the Defendant's collateral attack on his 1990 DUI conviction.

We now address the validity of the Defendant's second conviction of DUI, which occurred in the General Sessions Court of Hamilton County, Tennessee, in 1997. The Defendant alleges that this conviction is invalid on its face for two reasons: (1) It failed to contain a warning that a conviction in another state may be used to enhance the punishment for a DUI committed in Tennessee, and (2) the judge who accepted the Defendant's guilty plea was a special judge who was not properly appointed. Having previously concluded that the failure to warn of the future possibility of enhanced punishment does not render a judgment of conviction facially void, we now consider the Defendant's second ground for attacking the 1997 conviction, that the special judge who

---

[2]The Defendant's reliance on Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 271 (1969), and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), in this regard is misplaced. These cases address the requirement that a guilty plea be entered into knowingly, intelligently, and voluntarily. While the understanding that the resulting conviction may be used to enhance the punishment of subsequent criminal activity is an important factor to consider when assessing the intelligence and voluntariness of guilty pleas, these cases in no way stand for the proposition that the lack of a warning of enhancement possibilities renders an otherwise valid conviction void.

accepted the guilty plea was not duly elected pursuant to Tennessee law.[3]     Tennessee Code Annotated section 16-15-209 addresses the procedure to be followed when appointing a special judge to preside over a court of general sessions or a juvenile court.  First, the judge who finds it necessary to be absent from court should attempt to locate a judge, current, former, or retired, to sit as special judge.  See Tenn. Code Ann. § 16-15-209(a)(1)-(2).  If necessary, the absent judge may apply for assistance from the administrative office of the courts in finding a judge to sit as special judge.  Id. § 16-15-209(a)(3).  "Only after exhausting the procedures set out in subdivisions (a)(1), (2) and (3), a judge may appoint a lawyer from a list, on a rotating basis, of lawyers that have been previously approved by the judge or judges of the district or county . . . ."  Id. § 16-15-209(a)(4).  Where a lawyer is sitting as a special judge, the parties and counsel must be notified that the lawyer is a special judge who is sitting in the regular judge's absence.  See id. § 16-15-209(a)(4)(A).  Then the parties must choose to proceed and have their case heard by the special judge rather than await the return of the regular judge.  See id. § 16-15-209(a)(4)(B).[4]

The record before us contains no proof whatsoever of the procedure followed in the election of attorney William Hall as a special judge to hear the Defendant's case on June 10, 1997.  The only evidence in the record to support the Defendant's position is the testimony of the Defendant and that of Shawn Johnson, the Court Administrator of Hamilton County, Tennessee, who, at the time of Defendant's guilty plea in 1997, was the Assistant Court Administrator.  Mr. Johnson testified that in 1997, the general practice for appointing special judges in Hamilton County was to have the Court Administrator, then Ms. Bobbie Helton, attempt to find a retired judge who would sit as special judge.  If she was unable to find a retired judge, she would consult a list of practicing attorneys and call one of them with the request that they serve as a special judge for the day.  Mr. Johnson stated that he was not aware of any formal election held by the attorneys who were present in court, but he admitted that he was not particularly involved in the process.  Mr. Johnson further testified that he was unable to find a record indicating that William Hall had taken an oath as special judge on June 10, 1997.  However, he stated that the records from 1997 were "mixed up" and he had not had time to thoroughly go through them.  Finally, Mr. Johnson said that at the time of the Defendant's 1997 guilty plea, no form was used for obtaining the consent of all the parties to a special judge hearing their case.  He did not know whether the special judges orally informed the parties of their right to have their cases heard by a regular judge.  The Defendant testified that at the time of his 1997 plea, no one informed him that William Hall was a special judge as opposed to a regular judge, and no one asked him to consent, either orally or in writing, to William Hall presiding over his case.

It appears doubtful that the procedure utilized by the Hamilton County Court Administrator in 1997 for appointing special judges fully complied with Tennessee Code Annotated section 16-15-

---

[3]In his brief, the Defendant argues that the special judge was not duly elected pursuant to Tennessee Code Annotated section 17-2-118.  However, this provision is applicable only to courts of record.  Because the Defendant's 1997 judgment of conviction was entered in a general sessions court, the applicable statute is section 16-15-209.

[4]Prior to enactment of existing law, prior law contained similar provisions concerning the appointment of a special general sessions judge.  See Tenn. Code Ann. § 16-15-209 (Repl. 1994).  The differences between prior law and current law are not relevant to our disposition of this issue.

209. First of all, the Court Administrator is not authorized under the statute to seek a special judge. Second, other than Mr. Johnson's testimony that the Court Administrator "tried to get a retired judge first," there is no indication that the procedures set out in Tennessee Code Annotated section 16-15-209(a)(1)-(3) were exhausted before she consulted the list of private attorneys. Finally, the Defendant testified that he was neither apprised of Mr. Hall's status as a special judge nor asked to consent to the special judge hearing his case.

However, even assuming that the statute was not strictly adhered to in selecting a special judge, our analysis does not end there. The judge who presided over the Defendant's case could act as a de facto judge even if he were not properly appointed or selected. The position of de facto judge has long been recognized in Tennessee and is widely accepted throughout the country:

> A judge de facto is one acting with the color of right and who is regarded as, and has the reputation of, exercising the judicial function he assumes. He differs, on the one hand, from a mere usurper of an office who undertakes to act without any color of right: and on the other hand, from an officer de jure who is in all respects legally appointed and qualified to exercise the office . . . .

48A C.J.S. Judges § 2 (1981). The Tennessee Supreme Court has recognized "that even where there are constitutional infirmities in the manner in which a judge took office, that judge may still be deemed to be acting under color of authority as a de facto judge." State *ex rel.* Newsome v. Biggers, 911 S.W.2d 715, 718 (Tenn. 1995). The court drew a distinction between the situation where the judgment of a de facto court is directly challenged and where the Defendant seeks to collaterally attack the judgment. "Because Newsome did not challenge the municipal court's exercise of jurisdiction either during the trial phase in which he pleaded guilty or on direct appeal, he acquiesced to the court's exercise of jurisdiction." Id. at 719.

This Court has recognized the doctrine of de facto judges as recently as 1999. In State v. Mark John Turner, No. 01C01-9703-CR-00071, 1999 Tenn. Crim. App. LEXIS 584, at *12-13 (Tenn. Crim. App. June. 16, 1999), a defendant sought to have his prior DUI conviction declared void as an enhancement factor because the record did not reflect that the special judge who accepted his guilty plea had been properly elected. In affirming the judgment of the trial court, this Court stated,

> [T]he special judge was, at a minimum, a de facto judge . . . . There was no objection to the special judge's exercise of authority at the time the plea was entered in 1990, and no appeal was taken from the resulting conviction. "Like any judgment, a presumption of regularity in the proceedings attaches upon becoming final." Because the special judge acted with de facto authority and because this authority was not challenged during trial or on appeal, the defendant cannot now attack the integrity of the judgment.

Id. (citations omitted); see also Bankston v. State, 908 S.W.2d 194, 198 (Tenn. 1995) (holding that because the defendant did not challenge the jurisdiction of the municipal court either in that court or on direct appeal, the municipal court was a de facto court).

We see no reason to depart from the above precedent. Although William Hall may not have been elected according to the specific statutory provisions regarding special judges, he was a de facto judicial officer whose judicial acts are valid and not subject to collateral attack.

Having concluded that neither of his prior DUI convictions is facially invalid and subject to collateral attack, we now address the Defendant's second principal issue, that the trial court erred by not holding a hearing to determine whether the Defendant personally waived his right to testify.[5] The State argues that the Defendant has waived this issue by failing to raise it in a timely motion for a new trial. Although the Defendant did not raise this issue in a motion for a new trial, this Court has discretion pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure to take notice at any time of a plain error which affects a substantial right of the accused where it may be necessary to do substantial justice. See State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984); Veach v. State, 491 S.W.2d 81, 83 (Tenn. 1973); Herron v. State, 3 Tenn. Crim. App. 39, 51, 456 S.W.2d 873, 878 (1970), vacated on other grounds, 408 U.S. 937, 92 S. Ct. 2865, 33 L. Ed. 756 (1972). When deciding whether an error constitutes "plain error," we consider five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the issue is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). With respect to the first factor, the record is clear that no hearing was had pursuant to the mandate of Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999), to determine whether the Defendant personally waived his right to testify. In Momon, 18 S.W.3d at 161, the Tennessee Supreme Court held that the right of a defendant to testify in his own behalf is a fundamental constitutional right that may only be waived personally by the defendant; thus the second and third factors are satisfied. There appears to be no tactical reason for the Defendant to have waived the issue of not having a Momon hearing; therefore the fourth factor is satisfied. And finally, if the Defendant did not personally waive his right to testify on his own behalf, which is a fundamental right, it is necessary that we consider the issue to ensure justice. Therefore, we find that the failure to conduct a hearing pursuant to Momon to determine whether the Defendant did personally waive his right to testify was plain error. As such, the failure of the Defendant to raise this issue in a motion for a new trial does not preclude this Court from considering the issue. See Tenn. R. Crim. P. 52(b).

---

[5]The Defendant also asserts that, if the 1997 conviction were declared invalid, the 1990 conviction would be more than 10 years prior to the present conviction and therefore unavailable to be used to enhance the penalty for the present conviction pursuant to Tennessee Code Annotated section 55-10-403(a)(3). Because we find that the 1997 judgment is valid, it is not necessary to address this argument.

To ensure that the defendant's right to testify has been personally waived by the defendant, the court in Momon adopted procedural guidelines that call for defense counsel to request a jury-out hearing to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. See Momon, 18 S.W.3d at 163.[6] There is no evidence in the record that the procedural guidelines established by Momon were followed. Furthermore, there is no "evidence in the record to establish that the right was otherwise personally waived by the defendant." Id. The waiver of a defendant's right to testify on his own behalf will not be presumed from a silent record. See id. at 162. "In the absence of evidence to show that [a] defendant personally waived [the] right to testify, we must presume that he did not." State v. Dwayne Simmons, No. M2000-01199-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 359, at *17 (Tenn. Crim. App. May 11, 2001).

On remand, the trial court must first consider whether the Defendant did personally waive his right to testify. It may be that the Defendant did not desire to testify. The record is void of any indication one way or the other. If the Defendant did not desire to testify, and the court finds from the evidence that he personally waived his right to testify, then no further inquiry need be made. However, if the Defendant did wish to testify, but was deprived of that right, then the trial court must determine whether the violation of the Defendant's right to testify was harmless error beyond a reasonable doubt. See Momon, 18 S.W.3d at 166 (holding that the denial of the right to testify on one's own behalf may be found harmless beyond a reasonable doubt).

In determining whether the State has proven that the constitutional violation is harmless beyond a reasonable doubt, courts should consider the following factors: (1) the importance of the defendant's testimony to the defense case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; and (4) the overall strength of the prosecution's case. See id. at 167. The above factors "are merely instructive and not exclusive considerations." Id.

As was the case in Momon, there is not sufficient evidence in the record for this Court to give full consideration to these factors. We have no indication of what the substance of the Defendant's testimony would have been had he testified. The record does not reflect whether the Defendant desired to testify. The record does not reflect that the Defendant personally waived his right to testify. The Defendant simply asserts that the trial court did not comply with the Momon guidelines. Finding this to be the case, we conclude that the case must be remanded to the trial court for the determination of whether the Defendant did, in fact, wish to testify on his own behalf. If he did, then a hearing must be held at which the State will bear the burden of establishing that the denial of the Defendant's right to testify on his own behalf was harmless beyond a reasonable doubt. If the trial court concludes that the State has met its burden, the Defendant's conviction will be sustained. However, if the State fails to prove that the error was

---

[6]This Court has held that the Momon requirements apply to bench trials as well as jury trials. See State v. Charles Randall Elrod, No. M2001-01125-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 83, at *8 (Tenn. Crim. App. Jan. 31, 1999).

harmless beyond a reasonable doubt, the trial court must vacate the Defendant's conviction and grant the Defendant a new trial.

We therefore remand this case to the trial court for a determination of whether the Defendant waived his right to testify and, if he did not, whether the violation of the Defendant's right to testify on his own behalf was harmless error.

_____
DAVID H. WELLES, JUDGE