IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 20, 2003 Session

## STATE OF TENNESSEE v. HOWARD DUTY, JR.

**Appeal from the Criminal Court for Sullivan County**
**No. S45,840     R. Jerry Beck, Judge**

**No. E2002-01772-CCA-R3-CD**
**December 23, 2003**

Convicted by a jury of assault and aggravated stalking, the defendant, Howard Duty, Jr., appeals. In addition to claiming that his convictions are not supported by sufficient evidence, he claims it was error for the trial court to enhance a charge of misdemeanor stalking to the felony of felony stalking. The lower court imposed the felony stalking conviction based upon a previous conviction of stalking that was adjudicated after the commission of the offense in the present case. Based upon our review, we conclude that sufficient evidence supports the stalking conviction; however, the aggravation of the stalking offense to a felony was improper. Thus, the lower court's actions are reversed in part and affirmed in part.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed in Part and
Reversed in Part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Terry L. Jordan, Blountville, Tennessee, for the Appellant, Howard Duty, Jr.

Paul G. Summers, Attorney General & Reporter; Renee W. Turner, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Todd Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On November 14, 2001, the defendant was charged via presentment with stalking James Martin from January 13, 2001, through July 1, 2001. *See* Tenn. Code Ann. § 39-17-315(a)(1), (b)(1) (2003) (proscribing stalking as a misdemeanor). In the second count of the presentment, the defendant was charged with felony stalking. *See id.* § 39-17-315(a)(1), (b)(2) (2003) ("A second or subsequent violation of subsection (a) involving the same victim and occurring within seven (7) years of the prior conviction is a Class C felony."). In the third and final count of the presentment, the defendant was charged with assault, specifically, "intentionally and knowingly caus[ing] another,

James Martin, to reasonably fear imminent bodily injury." *See id.* § 39-13-101(a)(2) (2003) (assault is committed by one who, *inter alia*, "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury").

At trial, James Martin, the victim, testified that he met the defendant in the summer of 1998. Later a brief homosexual relationship developed, but the victim terminated the relationship. Subsequently, the defendant began appearing in the environs of the victim's Blountville home.

The victim introduced videotapes made by himself and, on some occasions, by the victim's daughter. The videotapes were made on various days, beginning on January 13, 2001 and concluding on July 1, 2001. The tapes and the victim's narrative testimony showed that on January 13, 2001, the defendant parked across the street from the victim's home and sat in his vehicle. On a number of days throughout the presentment's time frame, the defendant went to a middle school outdoor basketball court located about 500 feet from the victim's house. Typically, the defendant would play basketball on the court for a few minutes, then drive his vehicle around a circle that enveloped the victim's neighborhood, and return to the school. On occasion, the defendant sat or stood and looked toward the victim's house. The victim testified that the defendant usually made two or three trips to the neighborhood on each Friday evening and made five or six trips each Saturday.

In May, the victim was working on a utility pumping station near the chamber of commerce office in Bristol, Tennessee. The victim began seeing the defendant standing or sitting near the work site. On the afternoon of May 16, 2001, the victim was sitting in his truck at the work site when the defendant "walked by and he throwed [sic] a [finger-sized] rock and hit the side of the truck." The victim told the defendant, "[Y]ou need to get out of here . . . go on, leave me alone." The defendant retreated but came back and "throwed [sic] another [small] rock – hit the side of the truck." The victim told him again to leave, but the defendant stepped over a small fence, picked up then dropped a piece of wood, picked up a half of a brick, and said, "I'll just whip your ass." The victim told the defendant to come on, and they "got into it," meaning that a fist fight ensued, during the course of which both combatants struck the other. The victim testified that he "was afraid" during the encounter. Ultimately, the defendant left the scene.

Additionally, the victim testified that during the months that the defendant was seen in the victim's neighborhood, he was afraid of the defendant because he had been assaulted on two previous occasions.[1]

---

[1]Although the victim's testimony on this point strongly suggests that the defendant had assaulted the victim on two prior occasions, the victim did not specifically say the defendant had been the one who assaulted him. The nature of any prior assaults committed against the victim by the defendant was not imparted to the jury in the present case. Although not of record in the case now before us, this court's opinion in *State v. Howard Duty, Jr.,* No. E2001-03008-CCA-R3-CD (Tenn. Crim. App., Knoxville, Nov. 13, 2002), *perm. app. denied* (Tenn. 2003), describes the November 4, 2000 assault, wherein the defendant rammed his truck into the truck the victim was driving.

A police officer testified that he was familiar with the victim's neighborhood and had been to the defendant's house. He traced the possible routes of travel from the defendant's house to the victim's house and testified that, regardless of the route chosen, a traveler would pass two outdoor basketball courts between the defendant's house and the middle school outdoor court near the victim's house. Also, the officer testified that the defendant had a basketball goal in the gravel driveway at his house.

The defendant did not testify at trial.

## I. Sufficiency of the Evidence.

The defendant challenges the sufficiency of the evidence supporting the assault and felony stalking convictions. To assess the sufficiency of the convicting evidence, the appellate court determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Shaw*, 37 S.W.3d 900, 902-03 (Tenn. 2001); *State v. Keough*, 18 S.W.3d 175, 180-81 (Tenn. 2000). The appellate court affords the prosecution the strongest legitimate view of the evidence and the benefit of all reasonable and legitimate inferences which may be drawn from the evidence, and we defer to the trier of fact to weigh the evidence and to resolve factual issues, including credibility issues. *Shaw*, 37 S.W.3d at 902-03.

### (A) Aggravated Stalking.

"A person commits the offense of stalking who intentionally and repeatedly follows or harasses another person in such a manner as would cause that person to be in reasonable fear of being assaulted, suffering bodily injury or death." Tenn. Code Ann. § 39-17-315(a)(1) (2003). "'Follows' means maintaining a visual or physical proximity over a period of time to a specific person in such a manner as would cause a reasonable person to have a fear of an assault, bodily injury or death," and "'[h]arasses' means a course of conduct directed at a specific person which would cause a reasonable person to fear an assault, bodily injury, or death, including, but not limited to, verbal threats, written threats, vandalism, or unconsented-to physical contact." *Id.* § 39-17-315(a)(2)(A), (B) (2003). "Repeatedly" refers to two or more separate occasions. *Id.* § 39-17-315(a)(2)(C) (2003). Although stalking as defined above is a Class A misdemeanor, *id.* § 39-17-315(b) (2003), it is a Class C felony when it is a "second or subsequent violation . . . involving the same victim and occurring within seven (7) years of the prior conviction," *id.* § 39-17-315(b)(2) (2003). Stalking is a "continuing offense," based upon the proscriptive statute "contemplat[ing] a series of discrete actions amounting to a continuing course of conduct." *State v. Hoxie*, 963 S.W.2d 737, 743 (Tenn. 1998).

First, we examine the defendant's claim that the trial court erred in using Code section 39-17-315(b)(2) to aggravate the stalking charge to a Class C felony, even though the defendant had only a pending charge, not a conviction of misdemeanor stalking when he committed the instant offense. *See* Tenn. Code Ann. § 39-17-315(b)(2) (2003) (stalking is aggravated when the offense

is the "second or subsequent violation . . . involving the same victim and occurring within seven (7) years of the prior conviction"). The record reflects that, in August 2001, the defendant was convicted of stalking the victim, James Martin, on November 4, 2000. Thus, the defendant was convicted of stalking the same victim, and the current offense occurred within seven years of the conviction for the November 4, 2000 offense. The issue in dispute is whether the August 2001 conviction for the November 4, 2000 offense is a *prior* conviction.

In support of his position that the conviction for the November 4, 2000 offense is not a prior conviction, the defendant advances *State v. Blouvett*, 904 S.W.2d 111, 112-13 (Tenn. 1995), which holds that, for purposes of establishing offender range pursuant to the sentencing law, a "prior conviction" means that the conviction was adjudicated before the commission of the offenses for which the defendant is currently being sentenced. Conversely, the state relies, at least in part, upon *State v. Bowen*, 67 S.W.3d 826, 827 (Tenn. Crim. App. 2001), in which this court held that a second-offense driving while under the influence (DUI) conviction may be imposed, despite that Bowen's *first* conviction occurred after the DUI offense occurred in the *second* case. Based upon the differences in statutory language being construed in *Blouvett* and *Bowen*, however, we are unconvinced that either case affords much guidance in the present case.

Rather, we are guided by rules of statutory construction, particularly the rules that statutory provisions should be "construed according to the fair import of their terms . . . to promote justice[] and effect the objectives of the criminal code," Tenn. Code Ann. § 39-11-104 (2003), and that the reviewing court should apply the natural and ordinary meaning of the language employed, *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000). In the interests of promoting justice, we are also compelled by the established rule that a criminal statute is strictly construed in favor of the defendant. *Key v. State,* 563 S.W.2d 184, 188 (Tenn. 1978). Applying these rules, we construe Code section 39-17-315(b)(2) to mean that, to be a felony, a stalking offense must have occurred not only subsequently to a previous stalking offense but also subsequently to, and within seven years of, the *prior conviction* resulting from the prior offense. Applying normal and ordinary meaning to the language "[a] second or subsequent violation of subsection (a) . . . involving the same victim and occurring within seven (7) years of the prior conviction," we conclude that the legislature meant that at least one stalking *conviction* must precede the subsequent *offense* by no more than seven years before the subsequent offense may be prosecuted as a felony. That having not occurred in the present case, the evidence was insufficient to establish a felony.

As to the remainder of the elements of stalking in the light most favorable to the state, the evidence showed that the defendant intentionally and repeatedly followed and harassed the victim within the meaning of Code section 39-17-315. Because the victim had previously been assaulted by the defendant, combined with the defendant's doggedness, his threat to whip the victim, and his brandishing a brick on May 16, 2001, the victim would reasonably be fearful of bodily injury at the hands of the defendant. Therefore, the evidence establishes the elements of misdemeanor stalking. The judgment of conviction of felony stalking shall be vacated, and in its place the trial court shall enter a judgment convicting the defendant of stalking pursuant to Code section 39-17-315(a), after which the trial court shall resentence the defendant on the misdemeanor conviction.

-4-

## (B) Assault.

Assault, as alleged in the indictment, is committed by one who "intentionally, knowingly or recklessly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (2003).

We need not review the sufficiency of the evidence of assault via putting the victim in reasonable fear of imminent bodily injury because the jury acquitted the defendant of this charge. Instead, the jury convicted the defendant of assault via extremely offensive or provocative physical contact, based upon the trial court's instruction that the latter offense was a lesser-included offense of the former.

The defendant argues that no physical contact occurred on May 16, prior to the parties engaging in mutual combat. He assumes that, once the mutual combat commenced, he could physically contact the victim with impunity to a charge of assault via extremely offensive or provocative physical contact. We do not make that assumption. The evidence showed that the defendant was the provocateur. After weeks of loitering about the victim's home and then extending that behavior to the victim's work site, the defendant disobeyed a reasonable request to leave, picked up a brick, and threatened to whip the victim. That the victim did not back down does not endue the defendant with license to assault the victim. We conclude that the evidence authorized the jury to convict the defendant of assault through extremely offensive physical contact had that offense been charged.

## II. Plain Error Review of Lesser-Included Offense Instruction/Conviction.

This section of this opinion expresses the minority view of Judge Witt that the conviction offense of assault was not charged in the presentment. Presiding Judge Wade and Judge Woodall are of the view that the conviction offense of assault was charged in the presentment via its status as a lesser included offense.

The presentment in the case before us charged the defendant with assault via intentionally or knowingly causing the victim to reasonably fear imminent bodily injury, a Class A misdemeanor. Tenn. Code Ann. § 39-13-101(a)(2), (b) (2003). At trial, the court instructed the jury to consider not only this named offense but also the offense of intentionally or knowingly causing "physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative," a Class B misdemeanor. *See id.* § 39-13-101(a)(3), (b) (2003). The trial court treated assault via offensive or provocative contact as a lesser-included offense of assault committed by putting the victim in reasonable fear of imminent bodily injury. *See State v. Parker*, 932 S.W.2d 945, 954 (Tenn. Crim. App. 1996) (indictment calls for trial on not only the named offense but also on all lesser-included offenses of the named offense). Even though the issue has not been raised by the parties, the appellate court must determine whether the conviction offense in the present case was charged in the presentment; essentially, we must determine whether the conviction offense is a lesser-included offense of the offense named in the presentment. We

undertake this analysis pursuant to Tennessee Rule of Criminal Procedure 52(b), a provision for examining plain error.

Although by the terms of Code section 39-13-101 assault via offensive or provocative contact is a "lesser" offense than assault by putting the victim in reasonable fear of imminent bodily injury, we must nevertheless determine whether the former is "included" in the latter. Our supreme court has held that an offense is a lesser-included offense if:

> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>>
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>>
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999).

The undersigned discerns that, because the lesser offense contains the elements of extremely offensive or provocative physical contact, it requires an element in addition to those required in the greater offense. Judge Witt concludes that the lesser offense fails to satisfy any of the parts of the *Burns* test for determining a lesser-included offense. As such, the Class B misdemeanor offense of assault via offensive or provocative touching was not charged in the presentment. Because the jury acquitted the defendant of the named charge and no other charges are

included within the named charge, the conviction of assault should be reversed, and count three of the presentment should be dismissed.

It is the view of Presiding Judge Wade and Judge Woodall that the facts in this case establish that the Class B assault falls within part (b)(2) of the <u>Burns</u> test. While touching another in the manner contemplated by Tennessee Code Annotated section 39-13-101(a)(3) presents the potential for some harm to the victim, the risk of harm is not as serious as that which is present when the victim is threatened with immediate bodily injury as contemplated by section 39-10-101(a)(2). Although their language might qualify as dicta, a separate panel of this court recently observed that Class B misdemeanor assault is a lesser included offense of Class A misdemeanor assault:

> The Defendant was indicted for two counts of Class A misdemeanor assault: one count involving the caseworker and the other count involving the transportation officer. <u>See</u> Tenn. Code Ann. § 39-13-101(a)(2). The jury found him guilty on the count charging assault against the transportation officer and found him guilty of the lesser included offense of Class B misdemeanor assault against the caseworker. <u>See</u> Tenn. Code Ann. § 39-13-101(a)(3).

<u>See</u> <u>State v. Dennis Michael Richardson</u>, No. E2002-02675-CCA-R3-CD (Tenn. Crim. App. at Knoxville, July 14, 2003).

Accordingly, the assault conviction is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE